IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| ROYAL FLUSH PLUMBING, INC., | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action File No.: |
| | ) | |
| v. | ) | |
| | ) | |
| DUSTIN COLE and SOUTHERN SPECIALTY PROPERTIES, LLC | ) | |
| | ) | |
| Defendants. | ) | |

# COMPLAINT

Plaintiff Royal Flush Plumbing, Inc. ("Royal Flush") files this Complaint against Southern Specialty Properties, LLC ("Southern Specialty") and its owner Dustin Cole ("Cole") (collectively "Defendants") for trademark infringement and counterfeiting in violation of 15 U.S.C. § 1114, false designation of origin in violation of 15 U.S.C. § 1125(a), common law trademark infringement and unfair competition under federal and state law and states as follows:

## Introduction

1. Defendants are using counterfeit marks owned by Royal Flush to masquerade as Royal Flush causing consumer confusion and harming Royal Flush's reputation and the long-standing goodwill that Royal Flush has built in its mark.

2. Specifically, Defendants are, at a minimum, issuing fraudulent invoices for plumbing services that display a practically indistinguishable mark from Royal Flush's federally registered mark, U.S. Registration No. 6089856:

| **Royal Flush** | **Defendants** |
| --- | --- |
| | |

3. Defendants have infringed Royal Flush's federally registered word mark for "ROYAL FLUSH PLUMBING", U.S. Registration No. 6011108.

4. Defendants have also infringed Royal Flush's trademark rights in its common law mark shown below:

| **Royal Flush** | **Defendants** |
| --- | --- |
| | |

**Parties**

5. Royal Flush Plumbing, Inc. is a Georgia corporation, formed on January 22, 2004.

6. Royal Flush provides plumbing repair and maintenance services including pipe repair and insulation, sewer and drain cleaning, and toilet repair and installation.

7. Defendant Dustin Cole ("Cole") is a resident of the State of Georgia. Cole may be served with process at 3611 Braselton Hwy Ste 203, Dacula, GA 30019.

8. Defendant Southern Specialty Properties, LLC ("Southern Specialty") is a Limited Liability Company organized under the laws of the State of Georgia. Southern Specialty may be served with process at 8735 Dunwoody Place, Ste. N, Atlanta, GA 30350 to its Registered Agent, Northwest Registered Agent Service, Inc.

**Subject Matter Jurisdiction**

9. This action arises under the Lanham Trademark Act (15 U.S.C. §§ 1051-1127). Therefore, the Court has federal question jurisdiction over this action pursuant to 15 U.S.C. § 1221 and 28 U.S.C. §§ 1338(a) and (b).

10. The Court has supplemental jurisdiction over Royal Flush's state law claims based on 28 U.S.C. § 1367.

## Venue

11. Venue is proper in this judicial district under 28 U.S.C.A. § 1391(a)(2) and 1391(b)(2) because all or a substantial part of the events giving rise to the claim occurred in this judicial district.

## Personal Jurisdiction

12. Defendant Cole is a resident of the state of Georgia and is thus subject to the general personal jurisdiction of the courts located in Georgia.

13. The Court has personal jurisdiction over Defendant Southern Specialty because it is a Georgia limited liability company and transacts business within the State of Georgia.

14. The Defendants are also subject to personal jurisdiction in this Court because they committed tortious acts (namely, trademark infringement and unfair competition) in the State of Georgia.

15. Defendants are cognizant that their wrongful conduct harmed and continues to harm Royal Flush in Georgia, where Royal Flush is based.

## Factual Background

### Royal Flush and its Federally Registered and Common Law Marks

16. Royal Flush is full-service plumbing company that provides services spanning from toilet installation and repair services to pipe inspection, repair, and

replacement services, and has serviced thousands of homes and commercial buildings in the state of Georgia.

17. Royal Flush began operations in 1992.

18. Over the decades, the family-owned company has specialized in providing high-quality plumbing services and has established a reputation for its plumbing services and exceptional customer service.

19. Royal Flush began using its logo in connection with its plumbing maintenance and repair services in January 1993.

20. On November 25, 2019, Royal Flush filed an application to register its mark (shown in Paragraph 19, above) with the United States Patent and Trademark Office. The Trademark Office issued U.S. Registration No. 6089856 on June 30, 2020 (Registration No. 6089856). A true and correct copy of the Certificate of Registration is attached as **Exhibit 1**.

21. U.S. Registration No. 6089856 consists of a toilet with the literal element "MADE IN USA" written on the left side of the toilet. The toilet is lying on a cushion. A crown appears on the top left of the toilet. The design is on an oval

background. The shaded areas outside the oval represent transparent background areas and are not claimed as a feature of the mark.

22. Royal Flush has used the "ROYAL FLUSH PLUMBING" word mark in connection with its plumbing maintenance and repair services since June 1993.

23. On February 12, 2019, Royal Flush filed an application to register the word mark with the United States Patent and Trademark Office. The Trademark Office issued U.S. Registration No. 6011108 on March 17, 2020. A true and correct copy of the Registration Certificate is attached as **<u>Exhibit 1.</u>** (Hereinafter U.S. Registration No. 6089856 and U.S. Registration No. 6011108 are referred to as the "Registered Marks").

24. To promote its business, Royal Flush has used its Registered Marks in a variety of ways, including on its website at <plumbatlanta.com>, on social media sites including, Facebook (facebook.com/royalflushplumbinginc/), Instagram (instagram.com/royal_flush_plumbing_inc/), on vehicles, on business cards and on other marketing materials including but not limited to banners and mailers.

25. In addition to its Registered Marks, Royal Flush has used the following mark to promote its services in commerce since at least 1993 (the "Common Law Mark").

26. Royal Flush uses the Common Law Mark in connection with its business, including on its website at <plumbatlanta.com>, on social media sites including Facebook (facebook.com/royalflushplumbinginc/), Instagram (instagram.com/royal_flush_plumbing_inc/), on vehicles, and on signage displayed at its permanent locations.

27. As a result of Royal Flush's extensive use of its Registered Marks and its Common Law Mark (collectively, the "Royal Flush Marks") in commerce, through the sale of services, offering for sale of services, advertising, promotion, or otherwise, the Royal Flush Marks have achieved considerable goodwill throughout the United States.

28. As a result of Royal Flush's investment in the Registered and Common Law marks, the marks have achieved considerable goodwill in the United States.

29. Royal Flush markets its plumbing repair and maintenance services to owners of residential and commercial property owners, management companies for apartment rental units, and other manufacturers or service providers.

<u>Defendants and their Infringement</u>

30. Upon information and belief, Defendants started using the Royal Flush name and Royal Flush Marks at least as early as January 2026.

31. Defendants use their counterfeit mark (the "Infringing Mark") on, at a minimum, invoices for plumbing services (the False Invoices). A true and correct copy of the False Invoices is attached as **Exhibit 2**.

32. The top of the False Invoices prominently displays the Infringing Mark.

33. The top of the False Invoices displays Royal Flush's name, address, email address, website.

34. The False Invoices also state there is a one-year warranty from the date of completion.

35. The False Invoices list the billing address as Southern Specialty Properties LLC at 70 Priscilla Way, Newnan, GA, 30265 creating a false affiliation, connection, or association of Southern Specialty and Royal Flush.

36. The False Invoices include a phone number +1 (770) 408-8185.

37. The phone number +1 (770) 408-8185 does not belong to Royal Flush.

38. A Google search of the phone number +1 (770) 408-8185 directs the user to Southern Specialty Properties. A true and correct copy of the Google Search is attached as **Exhibit 3**.

39. Royal Flush did not provide the plumbing services listed in the False Invoices.

40. The Infringing Mark includes a picture of a toilet sitting on a purple throne with a regal purple hat, a yellow background, with the words "ROYAL FLUSH" above the toilet and "PLUMBING" below the toilet in yellow font.

41. A side-by-side comparison of the Royal Flush Marks and the Infringing Mark is provided as follows:

| **Royal Flush** | **Defendants** |
| --- | --- |
| | |
| | |

42. The Infringing Mark includes a depiction of a toilet that is identical to Royal Flush's Registered Marks.

43. The Infringing Mark is identical to Royal Flush's Common Law Mark as the toilet, text, and colors are the same, and the only difference is that the Infringing Mark excludes a purple background, but lines each letter of the term "ROYAL FLUSH PLUMBING" in purple.

44. Royal Flush did not authorize Defendants' use of its marks in connection with Defendants' False Invoices.

45. Defendants use the Infringing Mark in connection with plumbing services.

46. Given the widespread success of Royal Flush, Defendants counterfeited the Royal Flush Marks in order to portray a false association with Royal Flush.

47. Defendants are purposefully deceiving the consuming public into believing that their business is the same as or is related to Royal Flush. Defendants are accomplishing this at least by sending invoices prominently displaying the Infringing Mark along with Royal Flush's name, address, and website on the top of the invoice.

<u>Additional Background</u>

48. Defendant's Infringing Mark is confusingly similar to Royal Flush's Registered Marks.

49. Defendants' Infringing Mark is confusingly similar to Royal Flush's Common Law Mark.

50. The types of services provided by Royal Flush in connection with the Registered Marks and Common Law Mark are identical to the services provided by Defendant under the Infringing Mark, although Defendants' services are of a lesser quality and possess no goodwill or brand recognition apart from that derived from Defendant's infringement of Royal Flush's Registered Marks and Common Law Mark.

51. Royal Flush provides plumbing services to the same customers and through the same channels of trade.

52. Defendants use methods of advertising that overlap with Royal Flush's methods of advertising.

53. Defendants adopted the Infringing Mark to gain a competitive advantage by associating their services with Royal Flush's Marks and reputation.

54. Defendants' infringement has caused instances of actual confusion between the two businesses.

55. Royal Flush's Registered Marks and Common Law Mark are inherently distinctive; and, as compared to Defendants, Royal Flush is the senior user of both Marks.

56. Defendants are using the confusingly similar Infringing Mark in connection with identical services as those offered by Royal Flush. There exists, has existed, and will continue to exist actual and likely confusion among the public that Defendants are affiliated with Royal Flush causing Royal Flush irreparable harm.

57. Defendants use of the Infringing Mark in connection with identical services as those offered by Royal Flush is damaging Royal Flush's goodwill and reputation in the plumbing industry.

58. As a result of Defendants' willful actions, Royal Flush has been damaged and continues to be damaged, by the unauthorized publication, offering of services, and providing counterfeit services under the Infringing Mark. Defendants have never accounted to or otherwise paid Royal Flush for their improper, illegal, and unauthorized use of the Infringing Mark in connection with its counterfeit services.

59. Defendant Dustin Cole is an owner of Southern Specialty Properties, LLC.

60. Defendant Cole has actual knowledge of the acts of Southern Specialty alleged of herein.

61. Defendant Cole directs, controls, ratifies, participates in, or is the moving, conscious force behind the use of the Infringing Mark and actively and knowingly caused the infringement.

62. Upon information and belief, as the owner of Defendant Southern Specialty, Defendant Cole was directly involved in the conception, creation, adoption, and use of the Infringing Mark.

63. Upon information and belief, as the owner of Defendant Southern Specialty, Defendant Cole directed Defendant Southern Specialty to use the Infringing Mark.

64. Defendant Cole has materially encouraged, enabled, and contributed to the infringing conduct of the Defendant Southern Specialty.

65. Defendant Cole receives as an owner of Southern Specialty, a financial benefit from the infringement.

66. Royal Flush sent Defendants a cease and desist letter on or about March 27, 2026.

67. Defendants did not respond to that letter and, upon information and belief, continue to use the Infringing Marks.

## COUNTS

### Count I
### Trademark Infringement and Counterfeiting of Royal Flush's Registered Marks (15 U.S.C. §1114)

68. Royal Flush incorporates into Count I Paragraphs 1-67 with the same force and effect as if again set forth fully herein.

69. Defendants' use of the Infringing Mark infringes Royal Flush's federally Registered Marks (Registration Nos. 6011108 and 6089856).

70. The Infringing Mark is a counterfeit mark.

71. Defendants are using in commerce at least one reproduction, counterfeit, copy, or colorable imitation of one or more of Royal Flush's Registered Marks in connection with the sale, offering for sale, distribution, and/or advertising of the Counterfeit Services in a manner that is likely to cause confusion, or to cause mistake, or to deceive as to the source or origin of Defendants' services.

72. Defendants have sold, offered to sell, marketed, distributed, and advertised services in connection with the Registered Marks without Royal Flush's permission.

73. Royal Flush is the rightful owner of the Registered Marks. The Registered Marks are in full force and effect and has a federal registration.

74. Defendants are thus likely to cause damage and other irreparable injury to Royal Flush unless such actions are enjoined by this Court, Royal Flush having no adequate remedy at law.

75. Defendants' willful, intentional, and unauthorized use of the Registered Marks is likely to cause and is in fact causing confusion, mistake, and deception as to the origin of the counterfeit services among the general public.

76. Defendant Cole has induced or encouraged Defendant Royal Flush's acts of direct infringement and received financial benefits derived from the infringement. As such, Defendant Cole's activities constitute contributory infringement.

77. Accordingly, this is an exceptional case.

78. As a direct and proximate result of Defendants' willful misconduct, Royal Flush has suffered lost sales.

79. Royal Flush has no remedy at law that could compensate it for the continued, irreparable harm that it will suffer if the Defendants' willful misconduct is allowed to continue. Accordingly, Royal Flush seeks, and is entitled to, both preliminary and permanent injunctive relief.

80. As a direct and proximate result of the Defendants' willful misconduct, Royal Flush also has suffered damages to the valuable, Registered Marks; to its

reputation among U.S. Consumers; to the goodwill associated with the Registered Marks and brand, and other damages in an amount not yet known, but to be proven at trial.

81. Pursuant to 15 U.S.C. § 1117, Royal Flush is entitled to recover from each Defendant: (1) its profits, (2) any damages sustained by Royal Flush, and (3) the costs of this action.

82. Royal Flush is also entitled to recover reasonable attorneys' fees, treble damages, and/or enhanced profits.

83. Pursuant to 15 U.S.C. § 1117(b), Royal Flush is further entitled to an award of three times its damages or profits from each Defendant found to be intentionally using a counterfeit mark.

84. Alternatively, Royal Flush is entitled to an award of statutory damages pursuant to 15 U.S.C. § 1117(c).

85. As a direct and proximate result of Defendants' willful misconduct, Royal Flush has suffered irreparable harm to the value and goodwill associated with the Registered Marks, and to Royal Flush's reputation in the industry. Unless the Defendants are restrained and enjoined from further infringement of the Royal Flush Marks, Royal Flush will continue to be irreparably harmed.

86. Accordingly, Royal Flush has been and will continue to be irreparably harmed by Defendants' acts unless the Defendants are preliminarily and permanently enjoined by this Court.

**Count II**
**Trademark Infringement, False Designation of Origin and Unfair Competition Under Lanham Act § 43(a) (15 U.S.C.A. § 1125(a)) of Royal Flush's Registered Marks**

87. Royal Flush incorporates into Count II Paragraphs 1-67 with the same force and effect as if again set forth fully herein.

88. Defendants' use of Royal Flush's Registered Marks results in direct confusion as to the origin of Royal Flush's goods and services.

89. Defendants' Infringing Mark is confusingly similar to Royal Flush's Registered Marks, such that consumers and other members of the public are actually confusing the marks and are likely to confuse the marks. Indeed, there has been actual confusion between Royal Flush's Marks and Defendants' Infringing Mark.

90. Defendant Cole has induced or encouraged Defendant Southern Specialties' acts of direct infringement and received financial benefits derived from the infringement. As such, Defendant Cole's activities constitute contributory infringement.

91. Additionally, Defendants' use of the Infringing Mark constitutes false designation of origin and unfair competition by infringing Royal Flush's Registered

Marks and by falsely representing to the public that Defendants' company is Royal Flush.

92. Furthermore, the Registered Marks are so associated with Royal Flush's plumbing services that use of the Infringing Mark by Defendants constitutes false representation that Defendants' services are, in fact, offered by Royal Flush, or are otherwise affiliated with Royal Flush.

93. Defendants' actions — most significantly, their refusal to stop use of the Infringing Mark (as described above) — demonstrate that their infringement is intentional, willful, and malicious; Defendants are clearly trading on the goodwill associated with Royal Flush's Registered Marks.

**Count III**
**Trademark Infringement, False Designation of Origin and Unfair Competition Under Lanham Act § 43(a) (15 U.S.C.A. § 1125(a)) of Royal Flush's Common Law Mark**

94. Royal Flush incorporates into Count III Paragraphs 1-67 with the same force and effect as if again set forth fully herein.

95. Defendants' use of Royal Flush's Common Law Mark results in direct confusion as to the origin of Royal Flush's goods and services.

96. Defendants' Infringing Mark is confusingly similar to Royal Flush's Common Law Mark, such that consumers and other members of the public are actually confusing the two marks and are likely to confuse the two marks. Indeed,

Royal Flush is aware of at least one experience of actual confusion between Royal Flush's Mark and Defendants' Infringing Mark, as referenced above.

97. Additionally, Defendants' use of the Infringing Mark constitutes false designation of origin and unfair competition by infringing Royal Flush's Common Law Mark and by falsely representing to the public that Defendants' company is Royal Flush.

98. Furthermore, the Common Law Mark is so associated with Royal Flush's services that use of the Infringing Mark by Defendants constitutes false representation that Defendant's services are, in fact, offered by Royal Flush, or are otherwise affiliated with Royal Flush.

99. Defendant Cole has induced or encouraged Defendant Royal Flush's acts of direct infringement and received financial benefits derived from the infringement. As such, Defendant Cole's activities constitute contributory infringement.

100. Defendants' actions — most significantly, their refusal to stop use of the Infringing Mark (as described above) — demonstrate that their infringement is intentional, willful, and malicious; Defendants are clearly trading on the goodwill associated with Royal Flush's Mark.

**Count IV**
**Trademark Infringement Under**
**Georgia Common Law**

101. Royal Flush incorporates into Count IV Paragraphs 1-67 with the same force and effect as if again set forth fully herein.

102. Defendants' Infringing Mark is confusingly similar to Royal Flush's Registered Marks, such that consumers are likely to confuse the two.

103. Further, Defendant infringes Royal Flush's Common Law Mark as reflected in Paragraph 41 above.

104. Moreover, Royal Flush is the senior user over Defendants. Defendants' actions violate Royal Flush's common law rights in Georgia and throughout the United States.

105. Defendant Cole has induced or encouraged Defendant Royal Flush's acts of direct infringement and received financial benefits derived from the infringement. As such, Defendant Cole's activities constitute contributory infringement.

106. Defendants' actions — most significantly, their refusal to stop use of the Infringing Mark (as described above) — demonstrate that their infringement is intentional, willful, and malicious; Defendants are clearly trading on the goodwill associated with Royal Flush's Mark.

**Count V**
**Unfair Competition and Deceptive**
**Trade Practices Based on Georgia Law**

107. Royal Flush incorporates into Count V Paragraphs 1-67 with the same force and effect as if again set forth fully herein.

108. Defendants have engaged and continue to engage in fraudulent and deceptive acts and practices in violation of O.C.G.A. §§ 10-1-370 *et seq*.

109. Defendants have used and are using the Infringing Mark which is confusingly similar to Royal Flush's Registered Marks and Common Law Mark in connection with virtually identical services for which Royal Flush uses its Mark. Therefore, Defendants' use of the Infringing Mark misrepresents the source, sponsorship, approval or certification of his services.

110. Defendants' uses of the Infringing Mark have caused consumers to conclude falsely that there exists some affiliation, connection or association between Defendant and Royal. The actual and probable tendency and impact of Defendants' uses is to enable Defendants to deceive the public, including citizens of the State of Georgia for whose protection these Code Sections were enacted.

111. Defendants' wrongful conduct constitutes unfair competition as prohibited by O.C.G.A. § 10-1-370 *et seq*. including, but not limited to conduct prohibited by O.C.G.A. § 10-1-372(a)(1)-(3), (5), (12).

112. Moreover, at all times relevant to this Complaint, Defendants have had actual or constructive knowledge of Royal Flush's rights to its Marks and therefore Defendants' infringement was willful and deliberate.

**Count VI**
**Temporary, Preliminary and**
**Permanent Injunctions under Federal Law**

113. Royal Flush incorporates into Count VI Paragraphs 1-67 with the same force and effect as if again set forth fully herein.

114. Defendants' unfair business practices, as described throughout the entirety of this Complaint, are of a recurring nature and harmful to the consumers and the public at large, as well as to Royal Flush. Unless immediately enjoined by the Court, Defendants will continue these acts thereby causing the public Royal Flush further immediate and irreparable damage.

115. As a result of Defendants' acts, Royal Flush has suffered and continues to suffer and incur irreparable injury, loss of reputation and pecuniary damages to be proved at trial. Unless enjoined by this Court, Defendants will continue these acts, thereby causing the public and Royal Flush further immediate and irreparable damage.

**Count VII**
**Attorney's Fees and Prejudgment Interest**

116. Royal Flush incorporates into Count VII Paragraphs 1-67 with the same force and effect as if again set forth fully herein.

117. In relation to his wrongful acts described above and to each and every count set forth above, Defendants have acted in bad faith and has caused Royal Flush unnecessary trouble and expense. As detailed above, Defendants intentionally and in bad faith engaged in infringement and unfair competition with full knowledge of the harm that would result to the public and to Royal Flush.

118. Additionally, Defendants have refused to cease use of the Infringing Mark despite knowing of the infringement from the time he first began using the Infringing Mark.

119. Royal Flush is entitled to recover all expenses and fees arising from the misconduct of Defendants giving rise to the present litigation, including the reasonable attorney fees expended by Royal Flush, pursuant to O.C.G.A. § 13-6-11 and applicable federal law.

120. Royal Flush is also entitled to attorney fees under the Lanham Act.

121. Royal Flush is also entitled to recover prejudgment interest on its damages pursuant to O.C.G.A. § 13-6-13.

**Count VIII**
**Punitive and Treble Damages**

122. Royal Flush incorporates into Count VIII Paragraphs 1-67 with the same force and effect as if again set forth fully herein.

123. In relation to their wrongful acts described above and to each and every count set forth above, Defendants have acted with willful misconduct, malice, fraud, wantonness, oppression, and/or that entire want of care which raises a presumption of conscious indifference to the consequences of their actions.

124. Defendants knew that his intentional wrongful acts would cause substantial harm to Royal Flush; Defendants intended the consequences of his actions and the express goal of Defendants' wrongful acts was financial gain for Defendants' benefit and at Royal Flush's expense.

125. Given the intentional nature of Defendants' conduct, Royal Flush is entitled to an award of punitive damages pursuant to O.C.G.A. § 51-12-5.1 to punish and penalize Defendants, to deter Defendants from similar future misconduct and to deter other persons and entities similarly situated to Defendants from engaging in future misconduct like that of Defendants. Royal Flush is also entitled to have the damages it has incurred as a result of Defendants' conduct trebled, under the applicable laws.

## VII. Jury Demand

126. Royal Flush demands a trial by jury for all issues so triable.

## VIII. Prayer for Relief

WHEREFORE, Royal Flush requests the following relief:

(A) Temporarily, preliminarily, and permanently enjoin and restrain Defendants from:

i. continuing to use the Infringing Mark and/or any colorable imitation of same, in relation to their own business, organizations, leagues, teams, or related business or non-profit endeavors, including as a domain name;

ii. doing any other acts calculated or likely to cause confusion or mistake in the mind of the public or in the plumbing industry or related trade, area, arena, or field, or to lead persons into the erroneous belief that Defendants or any of Defendants' services, organizations, or endeavors are connected or associated with Royal Flush;

iii. competing unfairly with Royal Flush in any manner not otherwise described in this Prayer for Relief;

iv. engaging in unfair and deceptive trade practices against Royal Flush;

v. maintaining any use of or reference to the Infringing Mark, on any website and social media page over which Defendants have control; and

(B) Order Defendants to file with the Court and serve upon undersigned counsel for Royal Flush, within five (5) days of the entry of the TRO or preliminary injunction, or both, a report in writing under oath setting forth in detail the form and manner in which it has complied with said injunctions, pursuant to 15 U.S.C. § 1116(a);

(C) Direct Defendants to destroy all materials in their possession, custody or control, which use or otherwise contain the Infringing Mark, under 15 U.S.C. § 1118;

(D) Require Defendants, under 15 U.S.C. § 1117, to account to Royal Flush for any and all revenue derived by them, and for all damages sustained by Royal Flush by reason of Defendants' acts complained of herein;

(E) Impose treble damages against Defendants for their willful trademark infringement, under 15 U.S.C. § 1117;

(F) Impose actual damages arising out of Defendants' wrongful acts in a sum equal to three times the actual damages suffered by Royal Flush, as provided in 15 U.S.C. § 1117(b) and/or other applicable law.

(G) Order Defendants to pay Royal Flush punitive damages in a sum to be determined at trial but not less than $500,000.00 on the basis of Defendants' acts and refusal to acknowledge and acquiesce to Royal Flush's rights;

(H) Award Royal Flush its reasonable attorney's fees, costs and disbursements incurred on account of this civil action, under 15 U.S.C. § 1117 and interest on the foregoing attorneys' fees and court costs at the statutory interest rate from the date of judgment until paid;

(I) Require Defendants to withdraw any trademark registration application pending before the United States Patent and Trademark Office;

(J) Alternatively, that Plaintiff be awarded statutory damages from each Defendant found to be using a counterfeit mark of no less than $1,000 and no more than $2,000,000 per mark per type of good sold);

(K) Award Royal Flush such other and further relief as the Court may deem just and proper.

Respectfully submitted this 13th day of August, 2026.

**BEKIARES ELIEZER, LLP**

*/s/Robin L. Gentry*
Kennington R. Groff
Georgia Bar No. 782901
Robin L. Gentry
Georgia Bar No. 289899

2870 Peachtree Rd. #512
Atlanta, Georgia 30305
(404) 537-3686 – telephone
kgroff@founderslegal.com
rgentry@founderslegal.com